**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

DE'QUAN DUNCAN,

                **Petitioner,**

      **- against -**

**WILLIAM A. LEE, Superintendent, Green
Haven Correctional Facility,**

          **Respondent.**

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/7/15__

**OPINION AND ORDER**
**12-cv-2909 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Petitioner De'Quan Duncan brings this pro se habeas corpus petition pursuant to section 2254 of Title 28 of the United States Code challenging his conviction from the Westchester County Supreme Court upon his plea of guilty to the crime of Murder in the Second Degree.[1]  Duncan was sentenced to and is now serving an indeterminate term of eighteen years to life.[2]  On April 11, 2012,

---

[1]    *See* Petition for a Writ of Habeas Corpus ("Pet.") at 2.

[2]    *See id.*

-1-

Duncan filed the instant Petition,[3] challenging his conviction on the following grounds: (1) actual innocence; (2) ineffective assistance of counsel; and (3) his guilty plea was not knowingly, voluntarily, or intelligently entered.  For the following reasons, the Petition is denied.

## II.    BACKGROUND

### A.    The Offending Conduct

On May 22, 2008, Duncan called a cab to go to the home of Adam Arroyo.[4]  The driver of his cab was Geraldo Gutierrez.[5]  In Duncan's written statement, he said that he planned to "hop the cab" because he lacked the money to

---

[3]      The so-called "mailbox rule" provides that a pro se prisoner's habeas petition is deemed filed the moment he delivers it to prison officials for mailing. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "prisoner mailbox rule" described in *Houston v. Lack*, 487 U.S. 266, 276 (1988), to pro se prisoner habeas petitions). Furthermore, courts in the Second Circuit generally assume that a prisoner's papers are given to prison officials on the date they are signed.  *See Johnson v. Coombe*, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001) ("Although it is not clear when the plaintiff gave his complaint to prison officials, absent evidence to the contrary, the Court assumes that the prisoner gave his petition to prison officials for mailing on the date he signed it.") (quotation marks and alterations omitted).

[4]      *See* Petitioner's Written Statement ("Pet. Written Statement"), Ex. 1 to Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Opp. Mem."), at 1.

[5]      *See* Respondent's Brief, Ex. 22 to Opp. Mem., at 3.

pay for the trip.[6]  Arroyo met the cab at the top of Buckingham Road in Yonkers, New York.[7]  Upon reaching Arroyo, Duncan got out of the cab and proceeded to have an argument with Gutierrez over the fare.[8]  Duncan alleges that Gutierrez pulled out a knife,[9] but Arroyo claims that it was Duncan's knife.[10]  Duncan admits that he "flicked" the knife at Gutierrez several times.[11]  After the incident, which resulted in Gutierrez's sustaining multiple stab wounds, Gutierrez got back into his cab and drove away.[12]  Gutierrez died shortly after.[13]  Duncan was arrested and charged on June 12, 2008.[14]  Duncan was sixteen years old at the time of arrest.[15]

### B.   Procedural History

---

[6]      Pet. Written Statement at 1.

[7]      *See* Arroyo's Written Statement, Ex. 2 to Opp. Mem., at 1–2.

[8]      *See* Petitioner's Appellate Brief ("Pet. App. Brief"), Ex. 21 to Opp. Mem., at 6.

[9]      *See* Pet. Written Statement at 1.

[10]     *See* Arroyo's Written Statement at 3.

[11]     Pet. Written Statement at 1.

[12]     *See* Search Warrant Affidavit 191 Buckingham Road, Ex. 3 to Opp. Mem., at 4.

[13]     *See id.*

[14]     *See* Pet. App. Brief at 6.

[15]     See *id.*

Duncan was originally represented by Gregory Bartlett who was replaced by Richard L. Ferrante around November 25, 2009.[16]  Ferrante was the court appointed attorney at Duncan's pre-trial conference[17] on March 18, 2009, during which Duncan pled guilty to intentional murder in the second degree.[18]

Approximately two months after Duncan entered his plea, Duncan sent letters to the court and the Office of the District Attorney seeking to withdraw his plea on the basis that Ferrante had "pressure[d] him" into accepting it.[19]  In response, the court assigned a new attorney, Brendan O'Meara, who sought permission for Duncan to withdraw his plea with a motion pursuant to New York Criminal Procedure Law section 220.60(3).[20]  The motion was accompanied by a sworn statement from Jessica Murphy who allegedly had information inculpating Arroyo based on a telephone conversation she overheard where he first stated, "I killed somebody," and later in the same conversation said, "We killed

---

[16]     *See id.* at 7.

[17]     *See* Attachment to Pet. at 2.

[18]     *See* Pet. App. Brief. at 7.

[19]     Petitioner's Letter to Withdraw Guilty Plea, Ex. 14 to Opp. Mem., at 1.

[20]     *See* Opp. Mem. at 2.

-4-

somebody."[21]

The court denied Duncan's application to withdraw his plea on August 6, 2009, finding that his claims were "refuted by the record of the plea proceedings wherein he knowingly and voluntarily admitted his guilt in a thorough and complete plea allocution."[22]  Sentencing took place on August 13, 2009,[23] at which time Duncan was sentenced to a term of eighteen years to life.[24]

Duncan appealed his conviction to the Appellate Division, Second Department, raising the following claims: (1) "he was innocent of the charge of intentional murder"; (2) "the plea allocution was defective because it failed to inquire into the factual circumstances of [Duncan's] alleged intent"; and (3) the trial court erred by failing to either vacate the plea or to conduct a hearing to consider vacating the plea.[25]  In support of his last claim, Duncan argued that (a) "by moving to vacate his plea before sentencing, [Duncan] preserved his right to

---

[21]     *Id*. at 3.

[22]     *People v. Duncan*, No. 08-736, slip op. at 4 (N.Y. Sup. Ct. Westchester County Aug. 6, 2009).

[23]     Opp. Mem. at 23.

[24]     *See id.*

[25]     Pet. App. Brief at iii–iv.

challenge the voluntariness of his plea";[26] and (b) Duncan's plea was not made

knowingly or voluntarily as he was coerced by his attorney.[27]

       The Appellate Division unanimously affirmed Duncan's conviction

on November 30, 2010, holding that:

> The defendant's contention that certain statements he made to law
> enforcement officials cast doubt upon his guilt and rendered his
> plea factually insufficient is unpreserved for appellate review
> because he did not raise this contention in his motion to withdraw
> his plea . . . [Duncan's] contentions regarding his innocence and
> a justification defense are unsupported by the record and do not
> afford a basis for withdrawal of his plea[.] . . . [Duncan]'s
> acceptance of the plea offer was an informed choice . . . [and his]
> claim of coercion is belied by his statements under oath
> expressing satisfaction with his attorney's representation and
> acknowledging that no one had coerced his plea[.] [A]s there was
> no legitimate question as to the voluntariness of the plea, the
> Supreme Court providently denied the motion without conducting
> an evidentiary hearing.[28]

       Duncan submitted a letter seeking leave to appeal to the New York

Court of Appeals arguing that the Appellate Division abused its discretion in not

allowing him to withdraw his previously entered plea and that his plea was not

knowingly, voluntarily or intelligently entered because it was coerced by his

---

[26]    *Id.*

[27]    *Id.* at 21.

[28]    *People v. Duncan*, 78 A.D.3d 1193 (2d Dep't 2010).

attorney.[29]  On April 21, 2011, leave to appeal was denied because no question of law worthy of review was presented.[30]

On April 11, 2012, Duncan filed his pro se habeas corpus petition.[31] On June 26, 2012, Duncan moved for a stay of the habeas proceedings, so he could return to state court to "preserve issues that have a constitutional infringement of rights[.]"[32]  However, on August 16, 2012, Duncan withdrew his application for a stay of the proceedings.[33]

## III.   LEGAL STANDARDS

### A.   Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court may not grant a writ of habeas corpus to a prisoner in custody pursuant to the judgment of a state court with respect to any claim, unless the state court's adjudication on the merits of the claim: "(1) was contrary to, or involved an

---

[29]     *See* Petitioner's Additional Letter to New York Court of Appeals seeking leave, Ex. 28 to Opp. Mem., at 1.

[30]     *See People v. Duncan*, 16 N.Y.3d 858 (2011).

[31]     *See* Pet. at 1.

[32]     Petitioner's Motion for Stay of Proceedings at 1.

[33]     *See* Petitioner's Motion to Withdraw Motion for Stay.

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;"[34] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[35]

A state-court decision is contrary to clearly established federal law, as determined by the Supreme Court, in the following two instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[36]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it

---

[34]   28 U.S.C. § 2254(d)(1).

[35]   *Id.* § 2254(d)(2).

[36]   *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

-8-

should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[37]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous. Rather, "[t]he state court's application of clearly established law must be *objectively unreasonable*."[38]  This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[39]  While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[40]  Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order does not include an explanation of its reasoning.[41]

---

[37]     *Id.* at 407.

[38]     *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[39]     *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[40]     *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[41]     *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for [section] 2254(d) applies when a "claim," not a component of one, has been adjudicated.[42]

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[43]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[44]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations.  Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[45]

## B.    Exhaustion Requirement

---

[42]    *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311–12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." (quotation marks and citation omitted))).

[43]    *See id.*

[44]    *Id.* at 99.

[45]    *See* 28 U.S.C. § 2254(e)(1).

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[46]  In order to satisfy this exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[47] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[48]  Fair presentation of a claim, for exhaustion purposes, includes petitioning for discretionary review in the state's highest appellate court.[49]  However, "a federal habeas court need not require that a claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."[50]  In such cases, a district court may deem the

---

[46]     *Id.* § 2254(b)(1)(A).

[47]     *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[48]     *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Dave v. Attorney Gen.*, 969 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[49]     *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999); *see also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that in New York, exhaustion requires that a "criminal defendant . . . first appeal his or her conviction to the Appellate Division, and then . . . seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

[50]     *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997).

claims to be exhausted.[51]

   When a habeas petition under the AEDPA contains both exhausted and unexhausted claims, a district court "can offer the petitioner 'the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims.'"[52]  A district court may also deny a petition on the merits, even if it contains unexhausted claims.[53]  The Supreme Court has noted that "plainly meritless" claims should be denied on the merits rather than dismissed for failure to exhaust.[54]  Finally, in limited circumstances, a district court may stay a mixed petition and hold it in abeyance until it has been properly presented to the state courts.[55]

### C. Procedural Bar

   Under the adequate and independent state ground doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests

---

[51] *See id.*

[52] *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

[53] *See* 28 U.S.C. § 2254(b)(2).

[54] *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

[55] *See id.* at 277–78.

on a state procedural bar, federal habeas review is precluded.[56]  Even if the state

court alternatively rules on the merits of the federal claim, federal habeas review is

precluded if an adequate and independent state ground would bar the claim in state

court.[57]  Federal habeas review of procedurally barred claims is foreclosed unless

the prisoner can demonstrate either (1) "'cause for the default and actual

prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental

miscarriage of justice.'"[58]  To show cause for a default, a prisoner must put forth

some objective factor, external to the defense, explaining why the claim was not

previously raised.[59]  The Supreme Court has provided little guidance as to what

constitutes "prejudice," but it can be inferred that prejudice is shown when the

claim, if proven, would bear on the petitioner's guilt or punishment.[60]  The

---

[56]    *See Jones v. Duncan*, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)).

[57]    *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 72–82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996).

[58]    *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617–18 (2d Cir. 1994).

[59]    *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[60]    *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes" (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999))).

fundamental miscarriage of justice exception to the procedural bar rule is available only upon a showing of actual innocence.[61]  Finally, a habeas petitioner may not avoid the exhaustion requirement by waiting until federal habeas review to bring claims properly raised in state court.  If such claims would be procedurally barred on the state level, they are deemed exhausted and procedurally defaulted for the purposes of federal habeas review.[62]

### D.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and (2) that he suffered prejudice as a result of that representation.[63]  Both elements must be proven by the petitioner to assert a valid claim.  When considering the first factor, a court must apply a "strong presumption" that counsel's representation fell within the "wide

---

[61]    *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[62]    *See Coleman*, 501 U.S. at 735 n.1; *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006).

[63]    *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94 (1984).

range" of reasonable professional assistance.[64]  "[S]trategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable."[65]

   "Even if a defendant shows that particular errors of counsel were

unreasonable, . . . the defendant must show that they actually had an adverse effect

on the defense."[66]  Thus, to establish prejudice

> [t]he [petitioner] must show that there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different.  A reasonable probability
> is a probability sufficient to undermine confidence in the
> outcome.[67]

In other words, "[i]t is not enough 'to show that the errors had some conceivable

effect on the outcome of the proceeding.'"[68]

   Finally, the order of analysis of the two *Strickland* prongs –

performance and prejudice – is at the discretion of the court.  As explained by the

---

[64]  *Id.* at 689.  *Accord Bell v. Cone*, 535 U.S. 685, 697–98 (2002).

[65]  *Strickland*, 466 U.S. at 690.  *Accord Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices.") (quoting *Strickland*, 466 U.S. at 690).

[66]  *Strickland*, 466 U.S. at 693.

[67]  *Id.* at 694.

[68]  *Harrington*, 582 U.S. at 103 (quoting *Strickland*, 466 U.S. at 693).

-15-

Supreme Court:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.[69]

Accordingly, if a court finds that there is no prejudice, it need not reach the performance prong.[70]

### E.    Plea Allocution

A state court violates due process if it accepts a guilty plea without an affirmative showing that the plea is knowing and voluntary.[71]  That plea must be the product of "a voluntary and intelligent choice among the alternative courses of action open to the defendant."[72]  The purpose of the court's "knowing and

---

[69]    *Strickland*, 466 U.S. at 697.

[70]    *See Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

[71]    *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

[72]    *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  *Accord Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984).

voluntary" inquiry "is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced."[73]

Under the federal constitutional standard, a state court should determine the voluntariness of a guilty plea after "considering all of the relevant circumstances."[74]  A state court may satisfy this requirement by conducting a factual basis inquiry at the plea allocution, where the defendant is asked "to explain, in his own words, the factual basis for his plea."[75]  Moreover, on habeas review, "[a] state court's determination of the voluntariness of a defendant's guilty plea is a factual issue that is entitled to a presumption of correctness[.]"[76]  The petitioner must "rebut[] the presumption of correctness by clear and convincing evidence."[77]

## IV.   DISCUSSION

---

[73]   *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993) (emphasis in original).

[74]   *Willbright*, 745 F.2d at 780 (citing *Brady v. United States*, 397 U.S. 742, 749 (1970)).

[75]   *Id.* (citations omitted).

[76]   *Murray v. McGinnis*, No. 00 Civ. 3510, 2001 WL 26213, at *4 (S.D.N.Y. Jan. 10, 2001) (citing 28 U.S.C. § 2254(e)(1); *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Senna v. Patrissi*, 5 F.3d 18, 20 (2d Cir. 1993)).

[77]   28 U.S.C. § 2254(e)(1).

## A.    Actual Innocence

Duncan claims actual innocence based on his assertion that the case against him was "insufficient, and did not prove that [he] had been involved in [the] crime[.]"[78]  Duncan also cites to Jessica Murphy's sworn statement that she overheard a telephone conversation where Arroyo said, "I killed somebody," and later said, "We killed somebody."[79]  The Appellate Division found Duncan's claims of innocence to be unpreserved and also "unsupported by the record."[80]  An appellate court's decision that a claim is unpreserved and without merit is an adequate and independent bar to habeas review.[81]  Thus, Duncan's claim of innocence is procedurally barred.

If a petitioner's claims are procedurally barred, he might still obtain habeas review if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

---

[78]    Attachment to Pet. at 2.

[79]    Opp. Mem. at 3.

[80]    *Duncan*, 78 A.D.3d at 1193.

[81]    *See, e.g.*, *Witt v. Racette*, No. 10 Civ. 9180, 2012 WL 3205177, at *3 (S.D.N.Y. Aug. 7, 2012) (citing *Brown v. Perlman*, No. 07 Civ 8672, 2008 WL 2009220 (S.D.N.Y. May 8, 2008)).

the claims will result in a fundamental miscarriage of justice."[82]  Duncan's petition does not offer any justification to show cause for his default.  The only remaining question is whether there would be a fundamental miscarriage of justice if this Court fails to consider Duncan's claims.  Duncan argues that there would be a fundamental miscarriage of justice based on his alleged innocence.  To show "actual innocence," a petitioner must "present new[,] reliable evidence that was not presented at trial and show that it is more likely than not that no reasonable juror would have found [petitioner] guilty beyond a reasonable doubt."[83]  A petitioner is rarely able to satisfy the actual innocence standard and "in virtually every case, the allegation of actual innocence has been summarily rejected."[84]  Here, Duncan fails to meet his burden of showing actual innocence.  He provides only conclusory statements that the case against him was insufficient and the only new "evidence" he offers is Murphy's statement.  Murphy's statement that she overheard half of a telephone conversation is hardly reliable evidence and more importantly, it does not serve to exculpate Duncan when compared to his own sworn statements and

---

[82]     *Coleman*, 501 U.S. at 750.  *Accord Glenn*, 98 F.3d at 724; *Ylst*, 501 U.S. at 801; *Epps*, 13 F.3d at 617–18.

[83]     *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

[84]     *Schlup*, 513 U.S. at 324 (citations omitted).

-19-

written confession.  Accordingly, Duncan is unable to show that a failure to consider his claims will result in a fundamental miscarriage of justice.

Because Duncan is unable to overcome the procedural bar, his claim of actual innocence is rejected.

## B.  Ineffective Assistance of Counsel

Duncan asserts for the first time that he was deprived of his Sixth Amendment right to reasonably effective assistance of counsel.  His claim is based primarily on Ferrante's actions, but his petition also cites to unspecified errors by the two other attorneys representing Duncan in the state court proceedings, Bartlett and O'Meara.[85]  Duncan claims that he was prejudiced by Ferrante's failure to: (1) investigate whether the confession attributed to Duncan was a "fake, or forgery" through the use of a handwriting expert; (2) utilize information as to Duncan's health that might have exonerated Duncan; (3) secure a hearing to determine Duncan's state of mind and whether he understood the charges;[86] and (4) that Ferrante "intentionally" deceived Duncan and Duncan's family by telling them that Duncan would be able to withdraw his plea.[87]

---

[85]     *See* Attachment to Pet. at 1.

[86]     *Id.* at 2–5.

[87]     Pet. at 3.

-20-

Duncan has not directly raised the issue of ineffective assistance of

trial counsel prior to the instant habeas petition.  Because the ineffectiveness of

counsel claim was not "fairly presented to an appropriate state court,"[88] the issue is

unexhausted.[89]  When a claim cannot be raised on direct appeal, because it is based

on actions that are outside the record, it must be raised in a post-conviction motion

to vacate judgment under New York Criminal Procedure Law ("N.Y.C.P.L.")

section 440.10 ("section 440.10").[90]  In June 2012, Duncan requested a stay of this

habeas proceeding in order to preserve issues in the state courts,[91] but later

withdrew that request in August.[92]  In any event, it is now too late for Duncan to

bring a section 440.10 motion as the statute of limitations has run.  Because there is

---

[88]    *Turner*, 262 F.3d at 123 (quoting *Klein*, 667 F.2d at 282).

[89]    *See Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir.1994) (presenting claim
for the first time in an application for discretionary review does not satisfy the
exhaustion requirement); *James v. Marshall*, No. 05 Civ.1992, 2007 WL 3232513,
at *8 (E.D.N.Y. Oct. 31, 2007) ("[A] claim is not 'fairly presented' where it is
raised for 'the first and only time' in an application for discretionary review in the
Court of Appeals.") (citation omitted).

[90]    *See People v. Brown*, 45 N.Y.2d 852, 853-54 (1978); *see also
Caballeros v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994).  Section 440.10 allows a
defendant to bring a collateral proceeding to vacate a judgment in the court that
entered the judgment on several statutory grounds, including that "[t]he judgment
was obtained in violation of a right of the defendant under the constitution of this
state or of the United States."  N.Y.C.P.L. § 440.10(l)(h).

[91]    *See* Petitioner's Motion for Stay of Proceedings at 1.

[92]    *See* Petitioner's Motion to Withdraw Motion for Stay.

no further state remedy, Duncan's claims may be deemed exhausted and are procedurally barred.

Duncan does not allege that there is cause for his default with regard to his ineffective assistance of counsel claims, nor has he made a factual showing of his innocence.  Because Duncan cannot prove either cause or prejudice, the procedural defect is not excused.  Therefore, Duncan's ineffective assistance of counsel claim is denied.

### C.   Invalidity of Plea

Duncan argues on three grounds that his guilty plea was not entered knowingly, voluntarily or intelligently.  *First*, Duncan asserts that his attorney, Ferrante, coerced him into entering his guilty plea.[93]  *Second*, Duncan argues that his plea allocution "lack[ed] [] a full recital of the facts necessary to sustain an adjudication of guilt."[94]  *Third*, Duncan argues that he did not have medication "to address his . . . state of mind during the proceedings."[95]  All three of Duncan's claims are dismissed for the reasons set forth below.

Duncan's first two claims were raised on direct appeal.  With regard

---

[93]    *See* Pet. at 3.

[94]    Attachment to Pet. at 6.

[95]    Pet. at 3.

to Duncan's claim of coercion, the Appellate Division found that Duncan's acceptance of the guilty plea was an "informed choice" and that his "claim . . . is belied by his statements under oath expressing satisfaction with his attorney's representation and acknowledging that no one had coerced his plea[.]"[96]  Duncan does not argue that the Appellate Division's decision "involved an unreasonable application of[] clearly established Federal law," nor does he show that the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[97]  A state court's factual determination is reviewed under the deferential standard of the AEDPA and the only way to rebut the presumption of correctness is with clear and convincing evidence.[98]  Here, Duncan offers only conclusory statements to indicate that his plea was coerced.  Furthermore, Duncan gave reasonable responses throughout the allocution, illustrating to the court that he had an understanding of the proceedings and of the plea he was entering.[99]  The court asked Duncan if he had been "threatened, coerced or forced [] in any way to plead guilty," and Duncan said

---

[96]     *Duncan*, 78 A.D.3d at 1193.

[97]     28 U.S.C. § 2254(d)(1).

[98]     *See id*. § 2254(e)(1).

[99]     *See* Plea Minutes, Ex. 13 to Opp. Mem., at 8–16.

no.[100]  Accordingly, Duncan's first claim as to the inadequacy of his guilty plea is rejected.

Duncan also argues that his plea allocution was deficient because it "lack[ed] [] a full recital of the facts necessary to sustain an adjudication of guilt."[101]  The Appellate Division found that this claim was unpreserved and meritless.[102]  Because an appellate court's decision that a claim is unpreserved and without merit is an independent bar to habeas review,[103] Duncan's second claim is procedurally barred.  Duncan fails to offer an adequate basis to overcome the procedural bar.  No objective, external factor prevented Duncan from raising these allegations in his motion to withdraw his plea, and thus, Duncan is unable to show cause for his default.  A fundamental miscarriage of justice exception is only available upon a showing of actual innocence.[104]  Because Duncan has failed to provide evidence that he is innocent, he does not assert an adequate basis to

---

[100]     *See id.* at 9.

[101]     Attachment to Pet. at 6.

[102]     *See Duncan*, 78 A.D.3d 1193.

[103]     *See, e.g.*, *Witt*, 2012 WL 3205177, at *3 (citing *Brown*, 2008 WL 2009220).

[104]     *See Murray*, 477 U.S. at 496 ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

overcome the procedural bar.  Therefore, a merits analysis of Duncan's second claim is not necessary and his claim is dismissed.

Duncan's final claim as to the validity of his plea was not part of his direct appeal, and is therefore, unexhausted.  Duncan alleges in his petition that he lacked medication at the time of the plea and this impaired his ability to understand the proceedings.  Because Duncan has no further state remedy for this claim, this claim is deemed exhausted and is procedurally barred.  In addition, Duncan fails to allege cause for his default, nor has he made a factual showing that he is actually innocent.[105]  As a result, he cannot overcome the procedural bar and his final claim is denied.

Accordingly, Duncan's claim that his plea was deficient and was not knowingly, voluntarily, or intelligently entered is dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[106]  A "substantial showing" does not require a petitioner to show that he

---

[105]    *Glenn*, 98 F.3d at 724.

[106]    *Id.* § 2253(c)(2).

would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve encouragement to proceed further.'"[107]  Duncan has made no such showing.  Thus, I decline to grant a COA

The Clerk of the Court is directed to close this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            July 7, 2015

---

[107]      *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

**- Appearances -**

**Petitioner (Pro Se):**

De'Quan Duncan
# 91-A-4421
Auburn Correctional Facility
135 State Street
Auburn, New York 13021

**For Respondent:**

John J. Sergi
Assistant District Attorney
Westchester County
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601
(914) 995-4457